# IN THE CIRCUIT COURT FOR BALTIMORE COUNTY, MARYLAND

**JOHN JONES**
c/o Naomi R. Shatz, Esq.
65A Atlantic Ave.
Boston, MA 02110

and

**DAN DOE**
c/o Naomi R. Shatz, Esq.
65A Atlantic Ave.
Boston, MA 02110

    *Plaintiffs*,

      v.

**UNIVERSITY OF MARYLAND,
BALTIMORE COUNTY**
1000 Hilltop Circle
Baltimore, MD 21250
<u>Serve</u>:  Anthony G. Brown, Attorney General
       200 St. Paul Place
       Baltimore, MD 21202

and

**BOBBI HOYE**
1000 Hilltop Circle
Baltimore, MD 21250

and

**WHITNEY AMES**
1000 Hilltop Circle
Baltimore, MD 21250

    *Defendants*.

Case No. _____

## COMPLAINT AND JURY DEMAND

### INTRODUCTION

1.   This case arises out of the University of Maryland, Baltimore County's (UMBC) decision to turn a blind eye to egregious sexual assault and harassment perpetrated by its former swim coach, Chad Cradock ("Coach Cradock").

2.   For nearly twenty years, Coach Cradock sexually harassed and assaulted male members of the swim team by exposing his genitalia to them, asking them to show him their genitalia, hugging and kissing them, and groping their genitalia and buttocks.

3.   Coach Cradock did not limit this predatory behavior to a single student; as a belated investigation completed after his death uncovered, many male swimmers reported being sexually assaulted by Coach Cradock.

4.   Cradock's athletes were powerless in the face of his assault. When students tried to rebuff his advances Coach Cradock would stop coaching them and ignore them during meetings and practices. It was clear to members of the team that if they wanted to have a successful swimming career at UMBC, they had to tolerate Coach Cradock's sexual assaults. For many athletes, including Plaintiffs, their ability to complete their educations depending on the swimming scholarships that paid for their attendance at UMBC.

5.   One student, John Jones, reported Coach Cradock's behavior to his UMBC trainer in May 2019. Yet even after the trainer notified the school's assistant general counsel and Title IX coordinator of the complaint, UMBC did nothing to stop Cradock's daily harassment and assaults. When Cradock learned about Jones' complaint, he retaliated against Jones by refusing to speak to him or coach him, sending the clear message to other swimmers that complaining about his behavior would harm their career.

6.   Only when a group of students submitted a written formal complaint about Cradock in late 2020 could UMBC no longer pretend not to know about Cradock's behavior. A lengthy investigation conducted by the school confirmed that Cradock had been sexually assaulting and harassing his male swimmers since at least 2006.

7.   Plaintiffs John Jones and Dan Doe, two members of the UMBC swim team who Cradock harassed and assaulted for years, bring this complaint to redress the harm UMBC did to them by allowing Cradock's behavior to go unchecked.

## PARTIES

8.   At all times relevant to this Complaint, Plaintiff John Jones ("Jones")[1] was a student at the University of Maryland Baltimore County, and a member of the school's swimming and diving team. He lives in Montgomery County, Maryland.

9.   At all times relevant to this Complaint, Plaintiff Dan Doe ("Doe") was a student at the University of Maryland Baltimore County, and a member of the school's swimming and diving team. He lives in Contra Costa County, California.

10. Defendant University of Maryland Baltimore County ("UMBC") is a public research university with its main campus in Baltimore City, MD. UMBC receives federal funding.

11. Defendant Bobbi Hoye ("Hoye") is UMBC's Associate General Counsel and was, at the time many of the events in this case took place, also UMBC's Title IX Coordinator.

12. Defendant Whitney Ames ("Ames") is UMBC's Assistant Athletic Director for Compliance.

---

[1] Plaintiffs' motion to proceed by pseudonym has been filed contemporaneously with this Complaint.

## FACTS

13. Chad Cradock, a former swimmer at UMBC, began working as an assistant coach for the UMBC swimming and diving team as soon as he graduated in 1997.

14. In 2001, UMBC promoted Cradock to the position of head coach for its swimming and diving team.

15. In addition to his work with UMBC athletes, Cradock also was involved in the Retriever Aquatics Club, a swim club for children ages five and older that is affiliated with the school.

16. In his career at UMBC and with the Retriever Aquatics Club, Cradock coached hundreds of young athletes.

**Coach Cradock Sexually Harasses and Assaults John Jones**

17. John Jones transferred to UMBC in the spring of 2019 during his freshman year of college, and immediately joined UMBC's swimming and diving team in the spring of 2019. He was eighteen at the time.

18. Shortly after Jones joined the team, Coach Cradock began to sexually harass and assault Jones.

19. In the spring of 2019 Cradock followed Jones into the locker room before a race and asked Jones to show him his penis.

20. Starting in the spring of 2019 Cradock would tell Jones he loved him.

21. Starting in the spring of 2019 Cradock repeatedly asked Jones to kiss him, which Jones refused to do.

22. Starting in the spring of 2019 Cradock would rub Jones' stomach.

23. Jones stayed at UMBC over the summer of 2019 and trained with Cradock. Over that summer, Cradock's harassment and assault against Jones intensified.

4

24. Beginning in the summer of 2019, Cradock would come up to Jones from behind, hug him, and press his body into Jones'.

25. Beginning in the summer of 2019, Cradock would touch Jones' genitals when they were on the pool deck together.

26. When Jones would ask Cradock to stop touching him, Cradock would respond, "do you hate me?"

27. Cradock ignored Jones' repeated requests that he stop touching him.

28. Early in the summer of 2019, Jones spoke to one of his other coaches, Chris Gibeau, about Cradock's behavior. In that meeting Jones asked Gibeau why Cradock was so controlling over him, and told him that Cradock's behavior was "weird" and made him uncomfortable.

29. Jones also asked another coach, Elyse Gibson, why Cradock was so controlling.

30. Jones also talked to the team captains about his discomfort with Cradock's behavior. In 2019 he told three captains that he was uncomfortable with the way Cradock touched him and he was thinking about talking to UMBC Athletic Director for Compliance Whitney Ames, about Cradock's behavior. One of the captains told Jones about times Cradock's behavior had also made him uncomfortable, but he and another captain told Jones that that was just "how Chad is."

31. In late May 2019, Jones reported Cradock's behavior to his trainer, Meghan Sullivan. He told her that Cradock touched his genitals.

32. Sullivan told Jones that she would have to report what he had told her to others.

33. On May 31, 2019, Sullivan had a telephone call with Bobbi Hoye, then UMBC's Associate General Counsel and Title IX Coordinator, in which she told Hoye that a student had made a sexual misconduct complaint about their coach.

34. In that call, Hoye learned that a male athlete reported that Cradock would say to him "I need a hug" or "kiss me", and that Cradock tried to kiss the athlete.

35. Hoye learned that many students had complaints about Cradock but "are scared to say something."

36. Hoye was told that Cradock is "really good at manipulating people."

37. On June 4, 2019, Hoye e-mailed Ames and asked about an athlete that might have disclosed incidents that may fall under the Sexual Misconduct Policy.

38. Ames replied that no students had met with her, but that Sullivan had told her that a swimming and diving student might meet with her.

39. At the next practice after Jones had disclosed the abuse to Sullivan, Cradock approached Jones in tears and told Jones that someone had filed a report about him and that he was required to meet with Whitney Ames.

40. After this conversation, Cradock began treating Jones differently than he had before. He ignored Jones during meetings, and stopped providing him feedback and coaching.

41. Even after knowing that someone reported him, and having to speak with Whitney Ames about that report, Cradock continued his harassment and assault.

42. Throughout the fall and spring of 2019-2020, Cradock continued to touch Jones' genitals, ask for kisses and hugs, and tell Jones he loved him.

43. Cradock asked Jones' girlfriend if Jones was "good in bed."

44. Jones witnessed Cradock and assistant coach Nikola Trajkovic, who lived with Cradock, touch each other on the buttocks on the pool deck.

45. The students were sent home in March 2020 because of COVID, but Jones returned to train in summer of 2020.

46. In the summer of 2020 Cradock again asked Jones to kiss him.

47. In the summer of 2020 Cradock resumed frequently touching Jones' genitals.

48. Starting in summer 2020, Coach Cradock would use the COVID temperature checks he had to perform on the athletes each practice as an excuse to grope their genitals. While he was using one hand to take their temperature, he would touch their genitals with the other. He did this repeatedly to Jones in the summer and fall of 2020.

**Coach Cradock Sexually Harasses and Assaults Dan Doe**

49. Dan Doe was recruited to UMBC by Cradock and started at the school and on the swimming and diving team as a freshman in the fall of 2019. At the time he was nineteen years old.

50.  On the day Doe moved into his dorm at UMBC, Cradock came to his room to say hello to Doe and his parents. Cradock told Doe and his parents that Doe was "very special," and was one of his favorite athletes. He told Doe's parents that Doe would be team captain one day.

51. In Doe's first or second week of school he went out to dinner with Cradock, some teammates, and a potential recruit for the team.

52. During dinner, Doe went to the bathroom and Cradock followed him. Cradock took the stall next to Doe and then looked over the stall divider at Doe while Doe was using the bathroom.

53. While they were walking through the parking lot before dinner, Cradock tapped Doe and said, "hey look," then stuck his finger in one of Doe's teammate's genitals.

54. Over the next few weeks Cradock began harassing and assaulting Doe at practice.

55. Cradock would make Doe hug him and would grab Doe from behind and press his body into Doe's, saying "I love you" or "I missed you."

56. Cradock would say things like "be a good boy and kiss me on the neck."

57. Cradock repeatedly touched Doe's buttocks and genitalia, both on the pool deck and if they met in Cradock's office.

58. In late September 2019, there was an incident where Doe's roommate (who was not on the swim team) began assaulting his girlfriend in their room. Doe intervened to protect the girlfriend, and the next day told Cradock about the situation. Cradock reported the incident to the police and to the University's Title IX office.

59. Doe was then required to attend numerous meetings with the Title IX office as a witness to the event. Cradock insisted on being Doe's "support person" and attending those meetings with him. He instructed Doe to meet him on the pool deck or at his office before each meeting.

60. Before each meeting, Cradock would go into the bathroom on the way to the meeting and instruct Doe to join him.

61. Once in the bathroom, Cradock would instruct Doe to show him his genitalia. Doe always refused.

62. If Doe tried to use the bathroom, Cradock would look over the stall and watch him.

63. On some occasions while in the bathroom, Cradock would show his genitals to Doe.

64. In the fall of 2019, Doe would talk to Jones about Cradock's harassment and assault. Doe told Jones he wanted to transfer schools.

65. Jones told Doe that he had tried to report the harassment and assault the previous summer and the school had not done anything to address the report.

66. Jones told Doe that after he reported Cradock, Cradock had started treating him worse than he had before the report. Jones' account made Doe afraid of retaliation if he reported Cradock's behavior.

67. In mid-December 2019, during a practice, Cradock told Doe to change to a different type of swimsuit. He then followed Doe into the locker room and instructed Doe to change in front of him. Doe repeatedly demurred and retreated to a corner where he turned his back to Cradock to change. Cradock watched him change.

68. Doe's final meeting with the Title IX office about his roommate's case was on January 14, 2020. On that date Cradock ordered Doe to go into the bathroom with him, and repeatedly asked Doe to show Cradock his genitals. Doe refused.

69. Cradock continued to hug Doe, ask him to kiss him, profess his love for Doe, follow him into bathrooms and watch him use the bathroom, touch his buttocks, and touch his genitalia through the spring 2020 semester until the students were sent home due to COVID.

70. Doe returned to campus in August 2020.

71. When Cradock would perform temperature checks on Doe, he would touch his genitals or try to tickle him.

72. Throughout the fall of 2020 Cradock continued to touch Doe's genitals and buttocks and ask Doe to kiss him.

**Coach Cradock's Harassment and Assault Were Widespread and Well-Known**

73. Jones and Doe witnessed and heard about many other male swimmers who had been subjected to sexual harassment and assault by Cradock.

74. One team member, who was seventeen when he joined the team, told Jones about an incident where Cradock came into his hotel room in his underwear, and tried to cuddle with the student.

75. Jones saw Cradock rubbing other athletes on the stomach and kissing their necks on the pool deck.

76. Jones saw Cradock touch approximately 20 other male athletes' genitals on the pool deck.

77. Both Doe and Jones talked to many teammates about Cradock's behavior. Those teammates confirmed they experienced the same behavior.

**UMBC Belatedly Conducts an Investigation that Attempts to Minimize Cradock's Behavior**

78. In November 2020, a group of students made a complaint to UMBC's Title IX office about Cradock's behavior.

79. On November 24, 2020, UMBC notified Cradock that it had received numerous reports of his sexual misconduct and barred him from campus.

80. On December 8, 2020, Cradock retired his position at UMBC.

81. On December 24, 2020, UMBC issued an official notice of investigation on behalf of six members of the swimming and diving team, including Jones, who made allegations of sexual harassment, sexual assault, gender discrimination, and a failure to properly address serious dating violence issues by and against members of the team.

82. In March 2021 the investigation expanded to include allegations by additional students.

**UMBC's Investigation Substantiates Cradock's Years of Abuse**

83. On July 11, 2022, more than eighteen months after beginning its investigation and more than three years after Jones told his trainer that Cradock was touching his genitals, UMBC issued a 105-page report substantiating Jones'—and other athletes'—allegations.

84. The report contained accounts from students dating back to the 2006-2007 academic year detailing sexual harassment and assault by Cradock. A non-comprehensive list of examples includes:

    a.  A former athlete reported that in or around 2006-2007 he asked Cradock for permission to skip practice to seek medical care. Cradock told him he could not leave until he showed Cradock his penis. The student complied, despite knowing Cradock's request was inappropriate.

    b.  An athlete reported that he witnessed Cradock touching male athletes inappropriately, and two freshman athletes told him they were so uncomfortable with Cradock's touching they were thinking about transferring schools.

    c.  A female athlete reported a male athlete coming up to her at a meet and telling her that Cradock had just touched his testicles.

    d.  A female athlete reported learning from a male athlete that while the team was traveling, Cradock was alone in the male athlete's hotel room with him, and Cradock talked to the student about masturbating.

    e.  A female athlete reported hearing from male athletes that Cradock touched their genitalia.

    f.  A female athlete reported that Cradock encouraged a certain male athlete to call him "Daddy," and at one alumni event Cradock brought the student in front of a group of alumni and would not let him leave until he called him "Daddy."

    g.  Many athletes reported that Cradock would give special treatment to those students he sexually harassed and assaulted, and that if a student did not go along with his harassment and assault, he would ignore them as an athlete and not provide coaching or instruction.

85.  The report also demonstrated that UMBC employees knew about Cradock's inappropriate behavior and did nothing to stop it:

      a. On May 31, 2019, former associate general counsel and Title IX coordinator Bobbi Hoye learned that a student (Jones) had made an allegation of Cradock inappropriately touching students.

      b. Between May 31, 2019, and June 4, 2019, Whitney Ames, UMBC's Athletics Director, Compliance, learned that a swimmer had made a complaint of some type of sexual misconduct against Cradock.

      c. Between 2016 and 2020 Coach Elyse Gibson saw Cradock routinely enter the men's locker room without another adult accompanying him, in violation of USA Swimming rules. When she attempted to enforce the USA Swimming rule, Cradock told her that "college swimming is different" and did not stop entering the men's locker room alone.

86. When Jones received the report on July 11, 2022, he learned for the first time that Meghan Sullivan had informed Whitney Ames about his May 2019 complaint within days of him making it.

87. When Jones received the report on July 11, 2022, he learned for the first time that Associate General Counsel and Title IX Coordinator Bobbi Hoye had learned of his complaint when he made it in May 2019.

88. Prior to November 2022 Doe did not know that any UMBC employee other than Ms. Sullivan knew of complaints against Coach Cradock earlier than November 2020.

**Jones and Doe Were Significantly Negatively Impacted by the Misconduct**

89. Cradock's harassment and assault had profound negative impacts on Jones and Doe.

90. In the summer of 2019, after reporting Cradock and seeing no change in his behavior, Jones began experiencing frequent panic attacks for the first time in his life. He would have panic attacks before he swam and during races.

91. As a result of Cradock's behavior Jones has experienced extreme emotional distress that impacted his ability to participate in swimming, his relationship to family and friends, and his health. Jones continues to experience the symptoms of this emotional distress to this day.

92. The year that Cradock harassed and assaulted Doe, Doe had a worse swimming performance than any other year he has competed. The harassment and assault made him want to transfer schools, but because his athletic performance suffered under Cradock he was unable to get scholarship money at another institution.

93.  Cradock's behavior fundamentally changed Doe's relationship with swimming. After enduring Cradock's harassment Doe no longer enjoyed the sport, and only continued to participate to maintain his scholarship so he could graduate college.

94. Cradock's harassment has caused Doe significant emotional distress, which he continues to grapple with even years after Cradock left UMBC.

## COUNT 1
### Violation of Title IX
### 20 U.S.C. § 1681, et seq.
### Plaintiffs against Defendant UMBC

95. Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

96. UMBC receives federal funding.

97. Pursuant to Title IX, UMBC is prohibited from discriminating against its students on the basis of their sex, including by permitting its employees to engage in sexual harassment of its students.

98. Plaintiffs were subjected to pervasive and severe sexual harassment that was offensive and unwelcome while they were student athletes at UMBC.

99. This harassment included but is not limited to Coach Cradock's unwelcome touching of Plaintiffs' buttocks and genitals, his requests to view their genitals, his showing of his genitals to

Plaintiffs, his unwanted hugging and kissing of Plaintiffs, and his comments to Plaintiffs about loving them and asking them to declare love for him.

100. Cradock similarly harassed other student athletes for years before Jones and Doe arrived at UMBC.

101. UMBC employees, including those with the obligation and authority to stop the harassment, knew that Cradock was engaging in sexual assault and harassment of his athletes at least as early as May 2019 when Jones reported that harassment and assault to them.

102. Defendant UMBC failed to remedy the sexually hostile educational environment to which Plaintiffs were exposed even after having notice of the sexual harassment of Jones.

103. .Defendant UMBC's failure to promptly and adequately remedy the sexual harassment and sexually hostile educational environment was deliberately indifferent to Plaintiffs' rights.

104. These actions consistent sexual harassment against Plaintiffs under Title IX of the Educational Amendments Act of 1972.

105. Plaintiffs have suffered the damages described above as a result.

## COUNT II
### Violation of the Equal Protection Clause
### 42 U.S.C. § 1983
### Plaintiffs Against Defendants Hoye and Ames in their individual capacities

106. Plaintiffs repeat and reallege the allegations above as if full set forth herein.

107. The Equal Protection Clause guarantees equal treatment on the basis of sex, including an equal protection right to be free from sexual harassment in an educational setting.

108. The right to be free from sex-based discrimination, including to be free from sexual harassment in an educational setting, is clearly established.

109.     At all times relevant to this case, Defendants Hoye and Ames were acting under color of state law in the performance of their jobs at UMBC.

110.     By May 2019, if not earlier, Hoye and Ames had actual knowledge that Coach Cradock was inappropriately touching at least one of his athletes.

111.     Hoye and Ames were deliberately indifferent to this sexual harassment.

112.      Plaintiffs have suffered the damages described above as a result.

## COUNT III
### Violation of the Constitutional Right to Bodily Integrity
### 42 U.S.C. § 1983
### Plaintiffs Against Defendants Hoye and Ames in their individual capacities

113.     Plaintiffs repeat and reallege the allegations above as if full set forth herein.

114.     The Due Process Clause of the Fourteenth Amendment protects students' liberty interest in their personal safety and bodily integrity, including to be free from sexual harassment and assault.

115.     The right to be free from violations of bodily integrity, including to be free from sexual harassment and assault, is clearly established.

116.     At all times relevant to this case, Defendants Hoye and Ames were acting under color of state law in the performance of their jobs at UMBC.

117.     By May 2019, if not earlier, Hoye and Ames had actual knowledge that Coach Cradock was inappropriately touching at least one of his athletes.

118.     Hoye and Ames were deliberately indifferent to this violation of bodily integrity.

119.      Plaintiffs have suffered the damages described above as a result.

## COUNT IV
### Negligent Supervision and Retention
### Plaintiffs Against UMBC

120.     Plaintiffs repeat and reallege the allegations above as if full set forth herein.

121.     UMBC had a duty to supervise its employees to ensure that they did not harm students.

122.     At least as of May 2019, UMBC supervisors, including its associate general counsel, knew that Cradock was engaged in behaviors that harmed students.

123.     Despite having actual knowledge of Cradock's behavior, UMBC did not take any steps to discipline or terminate Cradock for nearly eighteen months.

124.     During those eighteen months, Cradock continued sexually assaulting and harassing Jones and Doe.

125.     Plaintiffs have suffered the damages described above as a result.

**COUNT V**
**Negligent Training**
**Plaintiffs Against UMBC**

126.     Plaintiff repeat and reallege the allegations above as if full set forth herein.

127.     UMBC had a duty to train its employees to ensure that they a) did not harm students; and b) to properly process, report, prevent, and otherwise handle claims of harassment and assault.

128.     Defendants failed to implement appropriate procedures for ensuring their employees its employees to ensure that they a) did not harm students; and b) to properly process, report, prevent, and otherwise handle claims of harassment and assault.

129.     In addition or in the alternative, Defendants failed to train their employees or ensure compliance that their employees a) did not harm students; and b) to properly process, report, prevent, and otherwise handle claims of harassment and assault.

130.     Plaintiffs have suffered the damages described above as a result.

## COUNT VI
### Negligence
### Plaintiffs Against UMBC

131.     Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

132.     UMBC had a duty to supervise its employees to ensure that they did not harm students.

133.     At least as of May 2019, UMBC supervisors, including its associate general counsel, knew that Cradock was engaged in behaviors that harmed students.

134.     Despite having actual knowledge of Cradock's behavior, UMBC did not take any steps to discipline or terminate Cradock for nearly eighteen months.

135.     During those eighteen months, Cradock continued sexually assaulting and harassing Jones and Doe.

136.     Plaintiffs were subjected to pervasive and severe sexual harassment that was offensive and unwelcome while they were student athletes at UMBC.

137.     This harassment included but is not limited to Coach Cradock's unwelcome touching of Plaintiffs' buttocks and genitals, his requests to view their genitals, his showing of his genitals to Plaintiffs, his unwanted hugging and kissing of Plaintiffs, and his comments to Plaintiffs about loving them and asking them to declare love for him.

138.     Cradock similarly harassed other student athletes for years before Jones and Doe arrived at UMBC.

139.     UMBC employees, including those with the obligation and authority to stop the harassment, knew that Cradock was engaging in sexual assault and harassment of his athletes at least as early as May 2019 when Jones reported that harassment and assault to them.

17

140.     Defendant UMBC failed to remedy the sexually hostile educational environment to which Plaintiffs were exposed even after having notice of the sexual harassment of Jones.

141.     .Defendant UMBC failed to promptly and adequately remedy the sexual harassment and sexually hostile educational environment, indifferent to Plaintiffs' rights.

142.     Plaintiffs have suffered the damages described above as a result.

### COUNT VII
**Gross Negligence**
**Plaintiffs Against Hoye and Ames**

143.     Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

144.     UMBC had a duty to supervise its employees to ensure that they did not harm students.

145.     At least as of May 2019, UMBC supervisors, including its associate general counsel, knew that Cradock was engaged in behaviors that harmed students.

146.     Despite having actual knowledge of Cradock's behavior, UMBC did not take any steps to discipline or terminate Cradock for nearly eighteen months.

147.     During those eighteen months, Cradock continued sexually assaulting and harassing Jones and Doe.

148.     Plaintiffs were subjected to pervasive and severe sexual harassment that was offensive and unwelcome while they were student athletes at UMBC.

149.     This harassment included but is not limited to Coach Cradock's unwelcome touching of Plaintiffs' buttocks and genitals, his requests to view their genitals, his showing of his genitals to Plaintiffs, his unwanted hugging and kissing of Plaintiffs, and his comments to Plaintiffs about loving them and asking them to declare love for him.

150.     Cradock similarly harassed other student athletes for years before Jones and Doe arrived at UMBC.

151.     UMBC employees, including those with the obligation and authority to stop the harassment, knew that Cradock was engaging in sexual assault and harassment of his athletes at least as early as May 2019 when Jones reported that harassment and assault to them.

152.     Defendant UMBC failed to remedy the sexually hostile educational environment to which Plaintiffs were exposed even after having notice of the sexual harassment of Jones.

153.     .Defendant UMBC failed to promptly and adequately remedy the sexual harassment and sexually hostile educational environment, indifferent to Plaintiffs' rights.

154.     Plaintiffs have suffered the damages described above as a result.

## COUNT VIII
### Violation of Article 24 of the Maryland Declaration of Rights
### Plaintiffs Against all Defendants

155.     Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

156.     Article 24 of the Maryland Declaration of Rights protects students' liberty interest in their personal safety and bodily integrity, including to be free from sexual harassment and assault.

157.     The right to be free from violations of bodily integrity, including to be free from sexual harassment and assault, is clearly established.

158.     At all times relevant to this case, Defendants Hoye and Ames were acting under color of state law in the performance of their jobs at UMBC.

159.     By May 2019, if not earlier, Hoye and Ames had actual knowledge that Coach Cradock was inappropriately touching at least one of his athletes.

160.     Hoye and Ames were deliberately indifferent to this violation of bodily integrity.

19

161.    Plaintiffs have suffered the damages described above as a result.

## COUNT IX
### Violation of Article 26 of the Maryland Declaration of Rights
### Plaintiffs Against all Defendants

162.    Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

163.    Article 26 of the Maryland Declaration of Rights protects students' liberty interest in their personal safety and bodily integrity, including to be free from sexual harassment and assault.

164.    The right to be free from violations of bodily integrity, including to be free from sexual harassment and assault, is clearly established.

165.    At all times relevant to this case, Defendants Hoye and Ames were acting under color of state law in the performance of their jobs at UMBC.

166.    By May 2019, if not earlier, Hoye and Ames had actual knowledge that Coach Cradock was inappropriately touching at least one of his athletes.

167.    Hoye and Ames were deliberately indifferent to this violation of bodily integrity.

168.    Plaintiffs have suffered the damages described above as a result.

## COUNT X
### Pattern or Practice
### Plaintiffs Against UMBC

169.    Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

170.    Article 26 of the Maryland Declaration of Rights protects students' liberty interest in their personal safety and bodily integrity, including to be free from sexual harassment and assault.

171.    The right to be free from violations of bodily integrity, including to be free from sexual harassment and assault, is clearly established.

172.     At all times relevant to this case, Defendants Hoye and Ames were acting under color of state law in the performance of their jobs at UMBC.

173.     By May 2019, if not earlier, Hoye and Ames had actual knowledge that Coach Cradock was inappropriately touching at least one of his athletes.

174.     Hoye and Ames were deliberately indifferent to this violation of bodily integrity.

175.     UMBC had a duty to supervise its employees to ensure that they did not harm students.

176.     UMBC had a duty to train its employees to ensure that they did not harm students.

177.     Despite having actual knowledge of Cradock's behavior, UMBC did not take any steps to discipline or terminate Cradock for nearly eighteen months.

178.     During those eighteen months, Cradock continued sexually assaulting and harassing Jones and Doe.

179.     Moreover, UMBC'S report contained accounts from students dating back to the 2006-2007 academic year detailing sexual harassment and assault by Cradock.

180.     The report also demonstrated that UMBC employees knew about Cradock's inappropriate behavior and did nothing to stop it.

181.     UMBC thus maintains an unlawful and unconstitutional pattern or practice as described in this Complaint.

182.     Plaintiffs have suffered the damages described above as a result.

WHEREFORE, Plaintiffs respectfully requests that this Court:

1. Award Plaintiffs compensatory and punitive damages in an amount in excess of $75,000.00;

2. Award Plaintiffs the reasonable attorneys' fees, expenses, and costs as provided by applicable law;

3. Award Plaintiffs all other damages as permitted by applicable law;

4. Grant all such other relief, including injunctive relief, as this Court deems equitable and just.

## JURY DEMAND

Plaintiffs respectfully request a jury trial in all claims so triable.

Respectfully submitted,

/s/ Levi S. Zaslow
Levi S. Zaslow (CPF No. 0812180330)
HIJAZI, ZASLOW & CARROLL, P.A.
3231 Superior Lane, Suite A-26
Bowie, Maryland 20715
(T): (301) 464-4646
(F): (301) 464-4188
Lzaslow@hzc-law.com

Naomi R. Shatz (*application to appear pro hac vice forthcoming)*
ZALKIND DUNCAN & BERNSTEIN LLP
65A Atlantic Avenue
Boston, MA 02110
(T): (617) 742-6020
(F): (617) 742-3269
nshatz@zalkindlaw.com

*Attorneys for Plaintiffs*

October 12, 2023